IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH D. ERKMAN,  Plaintiff, | ) ) ) |
| vs | ) ) Civil Action 05-358 ) |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,  Defendant. | ) ) ) ) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion for summary judgment (Docket No. 12) be granted.

II. Report:

Presently before the Court is a motion for summary judgment submitted by the defendant, Hartford Life and Accident Insurance Company ("Hartford"). For reasons discussed below, Hartford's motion for summary judgment should be granted.

The plaintiff, Joseph D. Erkman, commenced this action in the Court of Common Pleas of Butler County, PA., alleging that Hartford breached the parties' long-term disability insurance contract by failing to pay him benefits due thereunder. In response to the complaint, Hartford filed a timely notice of removal to this Court, and it is not disputed that the Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1331, as the plaintiff's claim for wrongful denial of benefits arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

Relevant facts, to which there is no dispute, are these: the plaintiff was employed

by Berry Metal Company from 1992 to 1999 as a welder. By virtue of his employment, the plaintiff was a participant in an employee welfare benefit plan sponsored by The Robins Group, Inc. and insured by a certificate of insurance (Group Policy GL/GLT-34962) issued by Hartford (hereinafter, the "Plan"). The Plan provides group basic life, supplemental life, dependent life, accidental death, dismemberment and loss of sight benefits, as well as long term disability benefits. The Plan Administrator is Berry Metal Company/The Robins Group. Hartford is the claims fiduciary of the Plan, and it is responsible for the payment of benefits due thereunder.

In January of 1998, the plaintiff informed his neurologist, Dr. David Lobas, that he was having seizures at night while he slept. On February 3, 1998, Dr. Lobas recommended that the plaintiff be excused from overtime work due to his neurological status. In June of 1999, the plaintiff stopped working after he had a seizure at work. The plaintiff began receiving short term disability benefits in June of 1999, which were due to expire on December 17, 1999.[1]

On November 11, 1999, the plaintiff applied for long term disability benefits on the basis that his seizures prevented him from working. On December 7, 1999, the plaintiff sustained a loss of income as a result of his disability. On January 18, 2000, the plaintiff applied for Social Security Disability pursuant to terms of the Plan. On April 24, 2000, the Social Security Administration denied the plaintiff's claim for disability benefits, but after appealing the denial of benefits, the plaintiff was awarded Social Security benefits on October 5, 2002, which were retroactive to October 1, 2001.[2]

On May 26, 2000, Hartford approved the plaintiff's claim for long term disability

---

1.   See, defendant's statement of material facts at ¶¶ 6-8, 11.

2.   Id. at ¶¶ 12, 14-15.

benefits, at which time it informed him as follows: that benefit payments would continue while he is deemed to have a "total disability" as defined by the Plan; that for the next 24 months, total disability meant he could not perform the essential duties of "your occupation"; but that for benefits to continue, "as of 12/7/2001, you must be so prevented from performing the essential duties of 'any occupation' for which you are qualified by education, training or experience." In a letter dated June 22, 2001, Hartford apprised the plaintiff that he will have received 24 months of benefits as of December 6, 2001, and it was reviewing his claim to determine if he would still be eligible for benefits when the criteria was changed to unable to perform "any occupation".[3]

On January 10, 2002, Hartford approved the continuation of the plaintiff's long term disability benefits. In the spring and summer of 2002, Hartford received medical records from several of the plaintiff's doctors to review his claim. Specifically, on May 9, 2002, Dr. Jayant Acharya completed an Attending Physician Statement, in which he diagnosed the plaintiff with "partial epilepsy with impaired consciousness, intractable", but he placed no limitations on the plaintiff's ability to stand, walk, sit, lift/carry, push or pull. The only limitations which Dr. Acharya placed on the plaintiff were to avoid significant heights due to risk of injury, working with heavy machinery, driving and swimming alone. On July 12, 2002, Dr. Fozia Chatta examined the plaintiff and found his condition was currently stable while on the medications Keppa and Lamictal, noting the plaintiff had not a seizure for at least 4 months. On July 26, 2002, Dr. Munir Elawar saw the plaintiff and reported he had been seizure-free since March 9, 2002 and would like to work, and Dr. Elawar believed that "with good control of his seizures, he

---

3.   Id. at ¶¶ 16, 19.

should be able to work."[4]

On January 27, 2003, Dr. Elawar saw the plaintiff again, at which time he noted his last seizure had been on November 16, 2002 while sleeping, and the plaintiff "is not totally disabled by his neurological condition." Dr. Elawar reported, however, that the plaintiff "is not to drive or operate heavy machinery", and he "also might be at risk up on a ladder or other similar places where a seizure could lead to injury." On April 29, 2003, Dr. Chatta completed a Physical Capacities Evaluation form on the plaintiff, in which she noted that the plaintiff could frequently lift 1-10 pounds, occasionally lift 11-20 pounds, but never lift over 20 pounds; that he could frequently push/pull 1-10 pounds, occasionally push/pull 11-50 pounds, but never push/pull over 51 pounds; and that in Dr. Chatta's opinion, the plaintiff was disabled.[5]

At Hartford's behest, the plaintiff was the subject of surveillance from April 30, 2003 to May 1, 2003, during which time the plaintiff was seen driving his car. The plaintiff was also the subject of surveillance from August 13-15, 2003, during which time he was observed driving a pickup truck, unloading a couch from it, and engaging in various loading and unloading activity, some of which appeared to involve heavy items. On August 15, 2003, the plaintiff was seen by Dr. Elawar, who reported that the plaintiff told him he had a mild seizure nine (9) days ago during his sleep, was under stress because he was moving, but his seizures had decreased in frequency, and he was no longer having major motor seizures.[6]

In September 2003, Hartford reviewed a surveillance video and report of the

---

4. Id. at ¶¶ 22, 25-27.

5. Id. at ¶¶ 29-30.

6. Id. at ¶¶ 31-33.

plaintiff and concluded his activity level was not consistent with his reported limitations. As a result, Hartford referred the plaintiff's claim to the Medical Advisory Group, LLC, where Dr. F. B. Dibble, a board-certified internist, reviewed the plaintiff's medical records and spoke to his treating physicians, Dr. Chatta and Dr. Elawar. Dr. Chatta opined that the plaintiff was capable of the physical demands of a Sedentary Level of employment as long as he was restricted from activities that might pose a physical hazard relative to his seizure disorder and he could find employment suitable to his skill level. Dr. Elawar opined that the plaintiff was responding appropriately to medication with decreasing seizure frequency, and he was capable of engaging in Sedentary Level employment activities with appropriate restrictions relative to seizures and safety. In a report dated January 2, 2004, Dr. Dibble concurred with the opinions of Drs. Chatta and Elawar, and he opined that the plaintiff was capable of the physical demands of Sedentary Level employment with appropriate limitations relative to heights, machinery and driving.[7]

On February 19, 2004, Hartford prepared an Employability Analysis which identified seven (7) different occupations which the plaintiff could perform with earnings potentials greater than required by the Plan. Accordingly, Hartford terminated the plaintiff's long term disability benefits on February 23, 2004, as it did not believe he was unable to perform the duties of any occupation.[8]

On August 20, 2004, the plaintiff appealed the denial of his long term disability benefits. As a result, Hartford arranged for a second independent medical review of the plaintiff's file, which was performed by Dr. Janet Jankowiak, a neurologist. After reviewing the

---

7. Id. at ¶¶ 34, 36-39.

8. Id. at ¶¶ 40, 41.

plaintiff's medical records and interviewing his treating physicians, Dr. Chatta and Dr. Elawar, Dr. Jankowiak opined as follows: that the plaintiff "could perform a full time sedentary job with regular daytime hours (no overtime) and with as little stress as possible.  He should absolutely NOT drive until he can demonstrate at least a 6 month period seizure free.  He also should not work on any heights (e.g. ladders or scaffolding), drive any motorized vehicles or work around machinery or in situations where he would be in danger should he have a seizure."[9]

On December 2, 2004, Hartford notified plaintiff's counsel that it completed its review of the plaintiff's appeal, and based on records in his file, it was upholding its decision to terminate his long term disability benefits.[10]  Thereafter, the plaintiff commenced this action.

It is Hartford's position that it properly denied the plaintiff's claim for long term disability benefits in accordance with the Plan.  Hence, Hartford moves for summary judgment.  Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

The plaintiff's claim for benefits is premised on § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court established the proper standard of review for challenged denials of claims under § 1132(a)(1)(B) of ERISA,

---

9.   Id. at ¶¶ 43, 47-49, 52.

10.  Id. at ¶ 54.

holding:

> a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility to benefits or to construe the terms of the plan.

489 U.S. at 115. Where a Plan expressly gives its administrator or fiduciary discretionary authority to determine benefits, a deferential standard of review is applied to a denial of benefits, and it is reviewed under an "arbitrary and capricious standard". Id. at 111-115.

To determine the proper standard of review then, we must look to the terms of the Plan to ascertain whether it granted Hartford discretion to interpret Plan terms or to determine one's right to benefits. Under the Plan, it is provided:

> ... Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [Plan].[11]

Clearly, the Plan cloaks Hartford with discretion to decide a participant's eligibility for benefits. Thus, we will review the denial of the plaintiff's claim under an arbitrary and capricious standard of review.

Significantly, the Third Circuit Court of Appeals has stated: "when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377, 378 (3d Cir. 2000). As explained in Pinto, "insurance carriers [or other such fiduciaries paying benefits out of their own funds] have an active incentive to deny close claims in order to keep costs down". Id. at 388. Here, it appears

---

11. See, the Plan (which is attached as tab B to Hartford's notice of removal) at p. 50.

Hartford has such an economic conflict of interest, for it both funds the Plan and determines claims for benefits thereunder.

In cases where a court finds a conflict of interest, it is to modify the arbitrary and capricious standard using a "sliding scale method, intensifying the degree of scrutiny to match the degree of conflict." Pinto, 214 F.3d at 379.  In employing the sliding scale method, our Court of Appeals has instructed that we take into account the following factors in deciding upon the severity of the conflict:

> (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction.

Stratton v. E.I. Dupont De Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004), citing Pinto, 214 F.3d at 392.

As to the first of these factors, the Court in Stratton assumed "there was a sophistication imbalance between the parties", as the plaintiff was not likely to have had ERISA claims experience, whereas the defendant, "a large, successful company with many employees, had numerous such claims." Stratton, 363 F.3d at 254.  Thus, the Court in Stratton found "this factor weighs in favor of heightening the standard." Id.  Similarly in this case, we assume there is "a sophistication imbalance" between Hartford, which is frequently an ERISA claims fiduciary, and the plaintiff, such that our degree of scrutiny should be heightened.

The second factor in our analysis -- information accessibility -- does not warrant imposing a heightened standard of review, since the record shows that Hartford adequately informed the plaintiff of his coverage of benefits and the criteria under which it reviewed the

continuation of benefits, as well as the reasons it terminated his benefits. Thus, this factor does not favor a heightened review.

As to the third factor, the exact financial arrangement between the insurer and the company, our Court of Appeals has stated that when an employer pays an independent insurance company to both fund and interpret a plan, "it generally presents a conflict and thus invites a heightened standard of review." Pinto, 214 F.3d at 383. Indeed, "if the same entity that determines whether a claimant is disabled must also pay for disability benefits, that entity has a financial incentive to find him or her not disabled." Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003).

The fourth and final factor relating to the status of the fiduciary is not relevant here, as the plaintiff has not presented evidence concerning the financial stability of Berry Metal Company or The Robins Group which would undermine their presumed desire to maintain employee satisfaction. Based on the relevant factors discussed above, Hartford agrees that its decision to terminate the plaintiff's long term disability benefits is subject to a "heightened" arbitrary and capricious standard.

In Stratton, supra, the Third Circuit Court of Appeals counseled:

> Even under the heightened [arbitrary and capricious] standard,
> a plan administrator's decision will be overturned only if it is
> clearly not supported by the evidence in the record or the
> administrator has failed to comply with the procedures required
> by the plan.

363 F.3d at 256.

Here, there is no evidence showing that Hartford failed to comply with the Plan's procedures. Further, the plaintiff has failed to show that Hartford's decision is not supported by

the record.[12]   We find that Hartford's decision to discontinue the plaintiff's benefits on grounds he was no longer disabled from performing "any occupation" is supported by the record.

The Plan defines the terms "Total Disability or Totally Disabled" in relevant part as follows:

> Total Disability or Totally Disabled means that:
>
> (1) during the Elimination Period; and
>
> (2) for the next 24 months, you are prevented by:
>
> > (a) accidental bodily injury;
> > (b) sickness;
> > (c) mental illness;
> > (d) substance abuse; or
> > (e) pregnancy,
>
> from performing the essential duties of your occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.
>
> **After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training, or experience**.[13]

As recited above, in December 2003, during an independent medical review by Dr. Dibble, both of the plaintiffs' treating physicians -- Dr. Chatta and Dr. Elawar -- opined that the plaintiff could perform sedentary work with certain limitations.  Dr. Dibble agreed with their assessments, and in a medical report dated January 2, 2004, Dr. Dibble opined that the plaintiff was capable of the physical demands of Sedentary Level employment with limitations relative to

---

12.   Although the plaintiff opposes Hartford's present motion, he has presented no facts to support his claim that Hartford's decision to discontinue his benefits should be overturned.

13.   See, the Plan at p. 38 (emphasis added).

heights, machinery and driving.[14]  Thus, Hartford terminated the plaintiff's long term disability benefits on February 23, 2004, as reports indicated the plaintiff was no longer disabled from any occupation.

When the plaintiff appealed the denial of his long term disability benefits, Hartford arranged for a second independent medical review of his file, which was performed by Dr. Jankowiak.  Dr. Jankowiak reviewed the plaintiff's medical records and interviewed his treating physicians, Drs. Chatta and Elawar.  At that time, Dr. Chatta reiterated that the plaintiff was capable of returning to full time sedentary employment, if he had the cognitive capacity to learn new skills.  Dr. Elawar, who formerly opined the plaintiff could perform sedentary work with certain limitations, was now uncomfortable trying to determine if the plaintiff could resume full time sedentary employment in light of the uncertain frequency of his seizures.  Following her independent medical review, Dr. Jankowiak reported that the plaintiff could perform a full time sedentary job, provided he does not drive to the job, work on any heights, use any motorized vehicles, or work around machinery where he could be injured if he had a seizure.[15]

Our review of Hartford's decision is based on a heightened arbitrary and capricious standard.  In Stratton, our Court of Appeals announced the deference that must be afforded under this standard: "[A] plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record".  363 F.3d at 256.

Here, Hartford's decision to terminate the plaintiff's long term disability benefits is supported by the record.  Although Dr. Elawar (when interviewed by Dr. Jankowiak) was no

---

14. See, defendant's statement of material facts at ¶¶ 36-39.

15. Id. at ¶¶ 47-52.

longer comfortable reporting that the plaintiff could perform sedentary work with certain limitations after Hartford discontinued his benefits, case law reveals that an administrator need not give deference to a doctor who retreats from his earlier position after a patient's benefits are denied, absent new medical evidence. See, Sell v. Unum Life Insur. Co., 2002 WL 31630707, *6 (E.D.Pa., Nov. 19, 2002) (finding that an administrator did not abuse its discretion when it failed to give deference to a letter of a physician who "changed his opinion only after his initial view was used to discontinue [plaintiff's] benefits... [The administrator] cannot be faulted for failing to give this later opinion overriding significance in the face of significant contrary evidence"). Accord, Gooden v. Provident Life & Accident Insur. Co., 250 F.3d 329, 333-34 (5th Cir. 2001). Furthermore, the United States Supreme Court has held:

> [C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's treating physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

Black & Decker Disability Plan v. Nord , 538 U.S. 822, 834 (2003).

Here, based on the shared medical opinions of Drs. Chatta, Dibble and Jankowiak, all of whom reported that the plaintiff could perform sedentary work with certain limitations, Hartford's decision to terminate the plaintiff's benefits is supported by the record. Thus, under a heightened arbitrary and capricious standard, Hartford's decision should be upheld.

Since no genuine issue of material fact is in dispute, and for reasons discussed above, the defendant is entitled to judgment as a matter of law. Therefore, it is recommended that the defendant's motion for summary judgment be granted.

Within ten (10) days after being served with a copy, any party may serve and file

written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                              Respectfully submitted,

                              s/ROBERT C. MITCHELL
                              United States Magistrate Judge

Dated: August            2005